IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


NYKA O'CONNOR,
      Plaintiff,

vs.                                                                    Case No.:  3:05cv384/RV/EMT

SECRETARY OF FLORIDA DOC, et al.,
      Defendants.
_____/

### O R D E R

    This cause is before the court on Plaintiff's third amended civil rights complaint filed pursuant to 42 U.S.C. § 1983 (Doc. 21).  Leave to proceed in forma pauperis has been granted (Doc. 12).  From a review of the complaint, it is evident that the facts as presented fail to support a viable claim for relief under section 1983 as to one or more of the named Defendants.  Therefore, the court will allow Plaintiff another opportunity to clarify his allegations in a fourth amended complaint.

    At all times relevant to this action, Plaintiff was an inmate housed at the Santa Rosa Correctional Institution (SRCI).  Named as Defendants are the Secretary of the Florida Department of Corrections (DOC); three grievance appeal respondents: T. Bowden, J. Moore, and Orlester Dickens; and the following SRCI mail room personnel: M. Booker and M. L. Carnahan (Doc. 21 at 1, 2–2A).

    Plaintiff states that during the summer of 2005, he provided a special power of attorney to Eileen Lawrence of "OMEGA-17 Lawyer Service Company" to prepare and file legal documents relating to Plaintiff's conviction (*id.* at 7).  Plaintiff alleges that he had corresponded with Lawrence at previous institutions with no problems, but after his arrival at SRCI on August 3, 2005, he has been unable to correspond with her, as the institution has advised Plaintiff that his mail to Lawrence "does not meet the criteria of legal mail" (*id.*).  In response, Plaintiff filed grievances, but

Defendants Bowden, Moore, Dickens, Carnahan, and Booker denied Plaintiff's grievances (*id.*).  "In the final stages" of filing grievances, Plaintiff appealed to the Bureau of Inmate Grievances and attached to his appeal an envelope from prior correspondence between Plaintiff and Lawrence, as well as a sealed envelope containing "Legal Mail stamped [and] addressed to [Lawrence]" that SRCI had refused to mail (*id.*).  Plaintiff states that when Defendants Moore and Dickens received Plaintiff's appeal, they opened the mail attached to the appeal and confiscated the mail and both envelopes (*id.*).  In November 2005, Plaintiff alleges that Lawrence sent "Legal Mail" addressed to Plaintiff at SRCI, but SRCI mail room personnel opened the mail and returned it to Lawrence because it failed to meet the five-page limit (*id.* at 7A).  Plaintiff states that he needed documents in that particular mailing to incorporate in his petition to the court regarding his conviction (*id.*).

Plaintiff claims that Defendants violated the First Amendment by prohibiting Plaintiff's correspondence with Lawrence "via SRCI Legal Mail Channels" "without providing a valid reason and/or a legitimate penological justification" (*id.*).  Instead, Plaintiff was forced to correspond with Lawrence "via SRCI Routine Mail Channels via unsealed envelopes" (*id.*).  "As a result of Plaintiff's Legal correspondence denial to [Lawrence] via Legal Mail at SRCI, Plaintiff failed to obtain said Legal Documents via Legal Mail, resulting in Plaintiff being unable to incorporate said needed Legal Documents in Plaintiff's litigation and to proceed in the pursuance [sic] of Plaintiff's arguable [sic] meritorious case" (*id.*).  Plaintiff also claims that Defendants violated the Fourth Amendment by opening and confiscating the "Legal Mail" he attached to his grievance appeal, because Defendants did not provide a "valid reason and/or a legitimate penological justification" for their actions (*id.* at 7B).  Finally, Plaintiff alleges that Defendants "have repeatedly condoned and/or personally committed Infringement of Plaintiff's Copyrighted/Trade-Name/Trademark NYKA O'CONNOR . . . by using Plaintiff's Trademark in the above acts without any voluntary bona-fide consent or agreement for Trademark use from Trademark owner" (*id.* at 7A), in violation of Article 1 Section 8 of the U.S. Constitution and the Lanham Act (*id.* at 8).

As relief, Plaintiff seeks an injunction requiring that Defendants refrain from using his copyrighted trade name, allow him to correspond with Lawrence via Legal Mail, and return the seized mail (*id.*).  Plaintiff also seeks "monetary relief" (*id.*).

Initially, Plaintiff has failed to state a basis for liability as to the Secretary of the Florida DOC, as Plaintiff apparently seeks to hold him liable on a respondeat superior theory of liability. It is well established that supervisory officials are not liable under section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. *See* Cottone v. Jenne, 362 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted). Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *Id.* (citation omitted). This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" *Id.* (internal quotation marks and citations omitted); Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999), *cert. denied*, 120 S. Ct. 1974, 146 L. Ed. 2d 804 (2000).

Isolated incidents are generally insufficient to establish a supervisor's liability, and filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied. Wayne, 197 F.3d at 1106; Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also* Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." Tittle v. Jefferson County Com'n, 10 F.3d 1535, 1542 (11th Cir. 1994). The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur. *See* Harris v. City of Marion, 79 F.3d 56, 58–59 (7th Cir. 1996). Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary. "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 362 F.3d at 1360 (internal quotation marks and citation omitted).

In the instant case, Plaintiff does not allege that the Secretary of the Florida DOC personally participated in the alleged constitutional violation, nor does Plaintiff allege the existence of a custom or policy of the DOC regarding interference with legal mail of inmates.  In fact, Plaintiff admits that he had no problem corresponding with Lawrence at several other DOC institutions.  In the absence of facts indicating that the Secretary knew of, caused, or participated in the alleged constitutional violation, Plaintiff should drop the Secretary as a Defendant.  In addition, to the extent Plaintiff seeks to hold any of the other Defendants liable, such as Defendants Bowden, Moore, and Dickens, simply because they denied his grievances or appeals, his claims against them are likewise subject to dismissal.   In his fourth amended complaint, Plaintiff should clarify which Defendants participated in restricting his mail use and confiscating his mail.

Next, Plaintiff's claim of trademark infringement, in violation of Article I Section 8 of the United States Constitution and the Lanham Act, is frivolous.  Plaintiff's theory that Defendants' use of his legal name to identify him in matters concerning his incarceration constitutes a trademark infringement is indisputably meritless.  Plaintiff should drop his trademark claim from his fourth amended complaint.

Regarding Plaintiff's First Amendment claim, it is settled law that interference with an inmate's access to the courts is a violation of a First Amendment right actionable under section 1983.  Lewis v. Casey, 518 U.S. 343, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996); Bounds v. Smith, 430 U.S. 817, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977); Chandler v. Baird, 926 F.2d 1057 (11th Cir. 1991).  However, as established in Lewis, to successfully allege a constitutional violation based upon a denial of access to courts, Plaintiff must specifically show how he was actually harmed or prejudiced with respect to the litigation in which he was involved.  Lewis, 518 U.S. at 350–51.  The type of prejudice that is deficient in the constitutional sense is that which hinders the inmate's ability to actually proceed with his claim; there is no constitutional mandate "to suggest that the State must enable the prisoner to discover grievances, and to litigate effectively once in court."  *Id.* at 353. Importantly, "the injury requirement is not satisfied by just any type of frustrated legal claim."  *Id.* at 354.  Plaintiff must show that he was prejudiced in a criminal appeal or post-conviction matter, or in a civil rights action seeking "to vindicate 'basic constitutional rights.'"  *Id.* at 354–55 (quoting Wolff v. McDonnell, 418 U.S. 539, 579, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974)).  Furthermore, he

must allege actual injury "such as a denial or dismissal" and show that presentation of his case was impeded because of Defendants' actions.  Wilson v. Blankenship, 163 F.3d 1284, 1290–91 (11th Cir. 1998) (citing Lewis); *see also* Bass v. Singletary, 143 F.3d 1442, 1445–46 (11th Cir. 1998).  So long as Plaintiff was able to litigate his claim, he cannot demonstrate that he was unconstitutionally denied access to the courts.  Wilson, 163 F.3d at 1291.  Moreover, Plaintiff cannot show an injury unless he shows that the case he was unable to pursue had arguable merit.  Lewis, 581 U.S. at 353 n.3; Wilson, 163 F.3d at 1291.

Plaintiff alleges that Defendants returned to Lawrence the mail she sent Plaintiff because it exceeded the five-page limit.  Because Defendants returned the mail, Plaintiff states that he could not incorporate the document into his petition.  However, Plaintiff has failed to show how he was actually harmed or prejudiced in any litigation.  Indeed, Plaintiff admits that he was still able to correspond with Lawrence via regular mail and that Lawrence has a special power of attorney to file documents on his behalf.  Plaintiff has not asserted that the document was never filed.  Furthermore, Plaintiff has failed to allege that he suffered any actual injury, "such as a denial or dismissal" of any action.  Unless Plaintiff alleges sufficient facts to state a constitutional claim, his claim will be subject to dismissal.

Additionally, Plaintiff has failed to state a claim under the Fourth Amendment concerning the alleged search and seizure of his property.  The Supreme Court has stated that prisoners have fewer Fourth Amendment rights than non-prisoners:

> A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order.  We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security.

Hudson v. Palmer, 468 U.S. 517, 527-28, 104 S. Ct. 3194, 3201, 82 L. Ed. 2d 393 (1984).  As more recently noted by the Eleventh Circuit in Padgett v. Donald,

> Prisoners "do not forfeit all constitutional protections by reason of their conviction and confinement in prison," Bell v. Wolfish, 441 U.S. 520, 545, 99 S. Ct. 1861, 1877, 60 L. Ed. 2d 447 (1979), but they do not enjoy the same Fourth Amendment rights as free persons, *see* Harris v. Thigpen, 941 F.2d 1495, 1513 (11th Cir. 1991) (noting that a prisoner retains only those rights consistent "with his status as a prisoner or with the legitimate penological objectives of the corrective system"

(citations omitted)). Prisoners have no Fourth Amendment rights against searches of their prison cells, for example. Hudson, 468 U.S. at 526, 104 S. Ct. at 3200. They must submit to visual body-cavity searches executed without individualized suspicion. Bell, 441 U.S. at 558, 99 S. Ct. at 1884. They must undergo routine tests of their blood, hair, urine, or saliva for drugs. Green v. Berge, 354 F.3d 675, 679 (7th Cir. 2004) (Easterbrook J., concurring).

401 F.3d 1273, 1278 (11th Cir. 2005).

Accordingly, prisoners have no Fourth Amendment rights against searches of their possessions. Moreover, in the instant case, Plaintiff's Fourth Amendment claim is premised upon the officers' opening and "searching" of mail that Plaintiff himself provided to the officers in support of his grievance. Nevertheless, to the extent Plaintiff claims Defendants violated any of his constitutional rights by reading his legal mail, his claim is properly analyzed under the First Amendment, as discussed above. Thus, Plaintiff should drop his Fourth Amendment claim in his fourth amended complaint.

Finally, Plaintiff is not entitled to all of the relief he seeks. To the extent Plaintiff seeks relief from SRCI officials, Plaintiff's claim for injunctive relief appears to be moot, as he is no longer incarcerated at SRCI. The court notes that in his third amended complaint, Plaintiff lists his address as "Florida State Prison" (Doc. 21 at 2). Therefore, he should drop his claim for injunctive relief against SRCI officials from his fourth amended complaint. See Spears v. Thigpen, 846 F.2d 1327, 1328 (11th Cir. 1988), Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985).

To the extent Plaintiff seeks relief in the form of monetary damages, Plaintiff is advised that he cannot recover compensatory or punitive damages, because he has not alleged any physical injury resulting from Defendants' actions. Subsection (e) of 42 U.S.C. § 1997e states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The Eleventh Circuit has decided that the phrase "Federal civil actions" means all federal claims, including constitutional claims. Napier v. Preslicka, 314 F.3d 528, 532 (11th Cir. 2000) (citing Harris v. Garner, 216 F.3d 970, 984-85 (11th Cir. 2000) (en banc)). In order to satisfy section 1997e(e), a prisoner must allege more than a de minimis physical injury. Harris v. Garner, 190 F.3d 1279, 1286-87 (11th Cir. 1999), reh'g en banc granted and opinion vacated, 197 F.3d 1059 (11th

Cir. 1999), *opinion reinstated in pertinent part en banc*, 216 F.3d 970 (11th Cir. 2000)) ("We therefore join the Fifth Circuit in fusing the physical injury analysis under section 1997e(e) with the framework set out by the Supreme Court in Hudson [v. McMillian, 503 U.S. 1, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)] for analyzing claims brought under the Eighth Amendment for cruel and unusual punishment, and hold that in order to satisfy section 1997e(e) the physical injury must be more than de minimis, but need not be significant."); Osterback v. Ingram, 2000 WL 297840, 13 Fla. L. Weekly D 133 (N.D. Fla. 2000), *aff'd.* 263 F.3d 169 (11th Cir. 2001) (Table), *cert. denied*, 536 U.S. 906, 122 S. Ct. 2362, 153 L. Ed. 2d 183 (2002) (holding that a prisoner plaintiff may not recover compensatory or punitive damages for mental or emotional injury without establishing that he suffered more than de minimis physical injury).

Furthermore, Plaintiff cannot recover monetary damages based solely on the alleged constitutional violation (divorced from any mental or emotional injury caused by the violation). Although some circuits have held that section 1997e(e) does not limit the recovery of punitive damages based solely on the alleged constitutional violation, Searles v. Van Bebber, 251 F.3d 869, 879 (10th Cir. 2001); Allah v. Al-Hafeez, 226 F.3d 247, 251–53 (3d Cir. 2000), the Eleventh Circuit in Harris declined to make such a distinction.  To the contrary, while the Harris court was careful to note that its holding was not binding on actions for nominal damages that are normally available for the violation of certain "absolute constitutional" rights without any showing of injury, it made no such reference to actions for punitive damages based solely on the alleged constitutional violation.  Harris, 190 F.3d at 1288 n.9.  In so noting, the court cited Carey v. Piphus, 435 U.S. 247, 266, 98 S. Ct. 1042, 1054, 55 L. Ed. 2d 252 (1978), where the Supreme Court made a distinction between nominal damages and substantial damages (i.e., compensatory and punitive) damages. Harris, 190 F.3d at 1288 n.9.  Furthermore, in analyzing the types of claims precluded by § 1997e(e), the Harris court followed closely the reasoning of Davis v. District of Columbia, 158 F.3d 1342, 1348 (D.C.Cir. 1998), which held that punitive damages based on the constitutional violation itself would not be available without the requisite physical injury requirement.  Harris, 190 F.3d 1288. Accordingly, Plaintiff must clarify the nature of the of the monetary damages he seeks.

Plaintiff should carefully review the foregoing to determine whether he desires to proceed with this action.  If Plaintiff determines that he does not, he should file with the court a notice of

voluntary dismissal.  If Plaintiff chooses to proceed with this action, he must completely fill out a new civil rights complaint form, marking it "**Fourth Amended Complaint**."  Plaintiff must limit his allegations to claims related to the same basic incident or issue and name as Defendants only those persons who are responsible for the alleged constitutional violations.  Plaintiff must place their names in the style of the case on the first page of the civil rights complaint form, and include their addresses and employment positions in the "Parties" section of the form.  In the statement of facts, Plaintiff should clearly describe how each named Defendant is involved in each alleged constitutional violation, alleging the claims as to each Defendant in separately numbered paragraphs and including specific dates and times of the alleged unconstitutional acts.  If Plaintiff cannot state exactly how a particular Defendant harmed him, he should delete or drop that person as a Defendant from his complaint.  Plaintiff's request for relief should be limited to only that which he could recover if he succeeds on his claims.  Plaintiff is advised that once an amended complaint is filed, all earlier complaints and filings are disregarded.  Local Rule 15.1, Northern District of Florida. Plaintiff should not file copies of his amended complaint until ordered to do so by the court.

    Accordingly, it is **ORDERED**:

    1.    The clerk of court is directed to forward to Plaintiff a civil rights complaint form for use by prisoners in actions under 42 U.S.C. §1983.  This case number should be written on the form.

    2.    Within **THIRTY (30) DAYS** from the date of docketing of this order, Plaintiff shall file an amended civil rights complaint, which shall be typed or clearly written, submitted on the court form, and marked "Fourth Amended Complaint."  In the alternative, Plaintiff shall file a notice of voluntary dismissal within the same time period.

    3.    Failure to comply with this order may result in dismissal of this action.


    **DONE AND ORDERED** this 21st day of September 2006.


                        /s/ Elizabeth M. Timothy
                        **ELIZABETH M. TIMOTHY**
                        **UNITED STATES MAGISTRATE JUDGE**